case number 241703. Thank you. Good morning. Morning. Take your time. How do you pronounce your name, sir? Jay Ofsiavich. Thank you. May it please the court, my name is Jay Ofsiavich and I'm here on behalf of Kevin Crawford. My question for you today is whether Mr. Crawford's due process rights were violated when, after being removed from the courtroom, he was sentenced in absentia. Mr. Crawford has some mental health issues. While he was found competent to stand trial, one of the things that stood out throughout all of the proceedings in his case is that he acted out in some form. This resulted in his removal from the courtroom many times. So I'm sorry, I just want to be very clear, you have not argued that he wasn't competent to waive any right to be present, is that correct? There's actually, I think, questions here whether or not he was competent. There was findings that he was competent and the court- Can you tell me where you contested that, like where was the best place, because the government says you didn't contest that. No, I haven't been challenging the competency, I've been challenging the question as to whether or not his acts were volitional at the time when he was removed from the courtroom. And that's really the question. We don't know what his mental state was at the time. So can you tell me, and I apologize, I did try to discern this from some of your briefs, what aspects of his disruptive behavior after being warned suggest that he was not acting in a knowing and voluntary manner? I think when we look at how Dr. Drobe, in his reports, explained his mental state and the problems associated with it, that at the time when he started acting out, that it's the stressors that he is experiencing causes him to act out in a non-volitional manner. That he's not doing this knowingly, that he's not acting necessarily on his own, but it's based upon the stresses that he's feeling. And we see this happen with people in other conditions, other health conditions. If this was a physical health condition, a physical problem, we probably would have reacted very differently to it. We know that stress can cause someone with diabetes to experience hyperglycemia or hypoglycemia, and they can experience certain things because of those stressors. We know that people, heart patients, who experience stressors can have palpitations, go through atrial fibrillation, and they may be not able to function properly. In this case, as Dr. Drobe explained, the stressors that he experiences causes him to act out in a non-volitional manner, and I think that's what we have to consider as to what is happening at the time. I thought that the issue, and maybe I got this wrong, but the question was whether his rights were violated when he was sentenced without some provisions being made for him to view the proceedings remotely. I thought that was the core issue. That is one of my concerns here, yes. Because there's a question here, was he acting volitionally? What do we know was happening to him? From the judge's findings, the judge actually didn't make a clear finding on that. On the one hand, she spoke about him acting out in each of the proceedings and treating it as if this was a volitional act. Other times, she referred to that he has mental health problems. So we really... Those are sort of... That is sort of subject to clear our review in terms of what his motivation was, whether it was intentional and so on. So, but on this other issue, which is a legal issue of what provisions need to be made, once you, as a district court judge of sentencing, I've actually never seen this happen, is removed from the sentencing proceeding, what provision do you make? Right. And that has been one of my concerns. We should be able to make provisions for him. When he was being charged on the superseding indictment, they were able... They made provisions for him. You just keep saying one of your concerns, there was no objection from counsel to the removal. No, but counsel did agree at sentencing that with the idea that there would be provisions made for him to hear and see the proceedings. So that's the core issue? Yes. That's directly at issue in the full review here? Yes, your honor. And the type of provisions that should be made, and these provisions are possible, it was the intention of the judge to have these provisions, and they didn't happen because the marshals took over and said, we can't do it at this time because the room is... And the counsel was aware of that, that the secure facility that he was moved to didn't have the remote access capability, and they proceeded nonetheless over no objection, is that my understanding? There was no objection at that time, correct, your honor. And also, defense counsel submitted a sentencing memorandum, they presented an argument, and Mr. Crawford spent, I think, 17 pages in the record addressing the court... Mr. Crawford did speak a lot. What he was... So the question is, was he heard? I mean, do those things suggest that he... There were things that may have come up that he may have asked counsel to address or that he may have wanted to address once the sentence itself was being administered, and that did not happen. He did not learn of the sentence until his attorney, after the fact, told him about it, as opposed to hearing it from the judge, which is, my understanding, is really what should be happening under Rule 43 with his presence. Do you know if there is a mechanism, a video mechanism, an audio mechanism to hear in the back once a defendant in a criminal proceeding is removed? Is there a ready way to do that? We know that they did that when he was being charged on the superseding indictment, and we have other technology that we could easily do that with. Right, but the issue is whether or not he waived it, and it's odd to say that at the same time, somebody waived it, and then he needed an accommodation. So, can you help me explain that? I mean, isn't that why we're dealing with Rule 43C, which is literally waiving a continued presence? So, how do you both waive something and then... Well, I question whether or not he actually waived it. We know because I don't think this was a volitional act, and I think with my understanding of... So, that's how you explain it. You say that it was not waived, and because it wasn't waived... We then are obligated where in the Due Process Clause to... Yes, to provide some accommodations for this. It became necessary for him to be removed from the courtroom. I'm not arguing that point. Right, but because he was calm, is this as a matter... It was incumbent upon the court to be able to predict that he was going to need this  Given the history of this case, I think it was very clear that it might have happened. In fact, the judge did make a comment that this was not unexpected. I think you're basically asking us to locate in a due process right an obligation on the who are not in the courtroom. Yes, Your Honor. There are times when that may be necessary. The technology exists. In fact, Justice Brennan spoke about this in 1970 in Illinois v. Allen and his concurrence suggesting that technology should be used when it becomes necessary to take... You're relying on Justice Brennan's concurrence. Yes, Your Honor. And I think given that this is now over 50 years later, we can look to this and we see the technology. We have done this remotely during the pandemic. We have had remote proceedings. So Justice Brennan's concurrence suggested it is a better practice and I don't disagree with that. But not necessarily required as a matter of process. I'm sorry, I didn't quite catch that, Your Honor. Justice Brennan's concurrence suggested it is a better practice and I don't necessarily disagree with that. But not that it's required as a matter of process. I think at this point the law is developing that we should have it required, Your Honor. Because of the technology? We have the technology, we have the means. We've been doing remote hearings. You agree that it's the law as it's developed but there's no clear law on this? No, not yet, Your Honor. So we would be the first in the country to say that this is required as a matter of due process. And I guess presumably that someone cannot waive this? Or how do we cohere that with something that we know? We have case law saying that it can be waived implicitly. Yes, but I think given the circumstance of this case and the fact that the findings are unclear as to whether or not he implicitly waived this, is the question. So I think given these circumstances, different accommodations should be made. You've reserved some time. Can I just ask one question? The government argues that to prevail here you'd have to show that the error was not harmless. Do you agree with that position? Yes, Your Honor. And if so, how can you show that the error was not harmless? That he wasn't there, he wasn't able to fully participate, he wasn't able to advise his attorney once he heard the sentence? I understand that he might have participated, but they say the sentence wouldn't have changed, there's nothing that he says he would have argued or no fact he would have brought to the court's attention or other aspect of his participation that would have made a difference. Do you agree that that's the standard? Because we don't know what happened, we can't go that far to say what would have happened. He got a below-guideline sentence. Yes, he did, Your Honor. He heard the gist of, you know, you and I have both been in sentencings, and this gist of it, he heard all that. Yes, Your Honor. But he didn't hear about the conditions of release that he is going to be under in 18 months. He missed out on some important aspects of the sentencing that clients... So we've got your argument. You also, I think, reserved some time for the public. If you did, we'll hear from the government. Thank you, Your Honor. Thank you. May it please the Court. My name is Tara McGrath, and I am an Assistant United States Attorney in the Eastern District of New York. I represented the government below. I'd like to address each of the points counsel raised in his remarks, beginning with whether the defendant's conduct was volitional. The defendant's own expert found that each of his actions was volitional, even though his overall pattern was compulsive. And that's in the record at S.A. 93. This defendant underwent four different competency evaluations, three of which found him competent, and one of which found him not. The most recent was from Dr. Kissin of FMC Devins. And there, Dr. Kissin found the defendant was disruptive, but that his disruptive behavior was due to a personality disorder and not severe psychiatric illness. That's at S.A. 72. Do you agree that it's a better practice, assuming that it was volitional, assuming on plain error that the district court was correct in its observation and so on, and in its crediting of, I think, the medical evaluations that you were about to describe, that it's a better practice if you're going to kick somebody out of a sentencing, which is a very significant proceeding and critical, to make some accommodation for that defendant to be able to see or hear the proceeding? Yes, Your Honor. We agree that it is a significant proceeding, and that would have been desirable. The court here attempted to do that. So initially, when the defendant was removed for the second time, the court intended for the defendant to be able to participate by audio or video. However, the marshals assessed that the defendant's state was such that for his own safety and for others, he had to be placed in an isolation cell into which there was no feed. The court was entitled to rely on the marshal's assessment of the safety needs, and the court also had a very long history on which to draw to determine that there was no reasonable suggestion that this would have played out differently another time. You mean, is that a harmlessness argument, this second part? It's not, Your Honor. It's in terms of whether it was reasonable for the court to decide that in that moment we should proceed, as opposed to wait to see if the defendant calmed down, or perhaps adjourn and bring back another time. Notably here... So what happened, you're telling me, is that in the ordinary course, the marshals or whoever in the back could have accommodated and can accommodate defendants who are being sentenced, but have been kicked out of the courtroom, but could in this specific case, because he was deemed by them to be too disruptive? Correct. He was acting out too violently, such that he had to be placed in an isolation cell. And the defendant's arraignment on the superseding indictment is instructive here. So the defendant was initially going to be arraigned by video from the MDC. He refused to be produced. Then he was brought to the courtroom. He refused to comport himself. It took the marshals about 20 minutes to subdue him, and eventually he was brought to an area of the courthouse where there is this technology to conduct proceedings with the defendant by video where they are not inside the courtroom. When the defendant was brought there, he attempted to throw a chair at the camera, and ultimately the court had to mute him because he was so disruptive. And that description is in the record at A38 and A218. Given that history, there is no reason to believe that even if the defendant had been brought to a place where he could be put on video, he would have been able to participate in any way, given his outbursts and given the need to mute him previously. In terms of harm, the defendant did hear much of his sentence and the reasons for it. He knew that he was going to be receiving a term of incarceration that reflected a downward departure. And indeed, we submit it is realizing that he would be receiving a term of incarceration as opposed to time served that caused him to act out. And that's in the record at A212 to A213. He also received in advance four of the five special conditions that the court imposed. That's in the record at A148. And there were no objections to any of the conditions. The sole condition he did not receive in advance was for drug treatment, for marijuana use. And the defendant admitted to using marijuana, and his own expert also found that he diagnosed him with cannabis abuse disorder. That's in the record at SA53 and in the PSR paragraph 67 to 68. So we submit even had the defendant been present and heard that fifth special condition and objected to it, the result would have been no different. Unless the court has any further questions. I do. That's okay. I'm trying to put together my thoughts on something your colleague on the other side indicated, which was that there is a due process right to having an accommodation. And if you could help me figure out how we square that with the text of 43C1C, that as an operation, at least of the rules of criminal procedure, say that you have waived it when you persist in disruptive behavior after being warned. And so if you could help me harmonize those ideas, I would appreciate it. Yes, Your Honor. We agree that Rule 43 makes no mention of an accommodation. So such is not required under the rule, and the Supreme Court has also not required it in Illinois v. Allen. Even in Brennan's concurrence, he indicates that reasonable efforts should be made to mitigate the harm. And we submit reasonable efforts were made here. The judge attempted to put the defendant somewhere where he could watch by video or audio, but because of his violent conduct, he could not be removed from an isolation cell. Right, but I mean, obviously, the rules would have to yield for a due process concern. But we have kind of smooshed the two of them, where we have tried to use the rules in a way that accounts for a due process concern. So can you help me figure out how we think about that? And I think that's why I started the conversation about the waiver and the volitionality of it, and we ended to whether or not an accommodation needs to be made. If you can help me square how these pieces fit together, I'd appreciate it. We don't believe that an accommodation need be made when someone does make a waiver of a constitutional right, competently, knowingly, and voluntarily, as occurred here. And so we do believe that you can entirely waive your constitutional right to be present. Okay, but then does it follow that if it was not volitional, then an accommodation had to have been made? If it were not volitional... Because I think that's what he would say. So tell me, do you have to win on whether or not he voluntarily waived it in order to prevail? And if not, tell me why. Your Honor, no, not here, because the defendant also needs to show harm. And this Court has required, even when finding an invalid waiver, that unless there is harm, there is no need for a remedy. No, no, no, no, no. An involuntary waiver? So you're telling me that if someone, if it were demonstrated that the waiver was not voluntary or knowing, that could be subject to a harmlessness analysis in the context of a sentencing or a plea, for example? Yes, Your Honor. In Salem, the defendant was found to have waived his... The defendant did not appear in person for a sentence because he was afraid that the marshals transporting him would spit on him and beat him. And a panel of this Court found on review that that waiver was involuntary. It was not made because he did not want to be present, but because he was concerned of the harm he would experience if he were transported. Nonetheless, because the defendant there could not show that his sentence would have been any different had he been present in court as opposed to on video, the sentence was affirmed. And we submit the same is true here. Presuming there was some sort of harm, however, then yes, we agree that one necessary component is that the waiver was voluntary. Okay, I'm sorry. So you would argue... I just want to make sure I'm understanding the order. You would argue that we look at harm first, and if we think that there was harm, then we go and conclude whether... We look at whether or not the waiver was voluntary, as opposed to the other way around. We look and see whether or not the waiver was voluntary, and if the answer is yes, then fine. No harm. In the particular circumstances of this case, where the defendant participated for virtually the entirety of his sentencing and made very lengthy remarks, that does seem to be a sensible approach because the defendant has not and cannot shown harm. But you... In answer to my question, you agreed that it was a better practice to accommodate, just as a matter of maybe a due process, maybe even of sort of a flexible understanding of this rule. Is that correct? Yes, Your Honor. Yes, Your Honor. And it sounds like you would not disagree that there would be some circumstances in which it was not voluntary, in which it might, in fact, be required as a matter of due process to give somebody an accommodation like this. Yes, Your Honor. Thank you very much. Thank you. I'll just be very brief, Your Honor. In response to the government referring to what happened during the superseding indictment, I think the record is clear. My client was not cooperative even when he was in the lock-up. But the court intended to take that into consideration. She envisioned that the marshals may have to subdue him and have him restrained. And you'll see that in the record at 218. There was no need to rush these proceedings and to do anything... Can you focus on... The whole game is harmlessness. Can you focus on why, even if the waiver was voluntary or not voluntary, that there's no... that your client was harmed, given the level of participation that did occur? Because the most significant point of the sentencing is the sentence and what he is going to face. He was not there to participate in it. He did not hear it until afterwards when his attorney told him. He couldn't raise any questions about it when the court imposed conditions of supervised release. So all these are factors that come into why it's not harm... why it is not harmless. You're saying there's kind of a structural error... Yes, Your Honor. ...that it can't be subject to harmless area review. Yes, Your Honor. And what's your comment about Salem or Saleem? I think the facts there are very different. We did say there, right, that it was subject to harmless area review. Yes, but I think the facts there become very different in terms of the client there making a choice into not showing up, even though the court found. Now, we don't know, really, the court's findings as to whether or not this is abolitional here. Alternatively, what you could do, if you have some questions, is to hold on to the case and send it back to the district court to ask the court to provide some findings as to why the court may or may not believe my client acted volitionally when he acted up. And from there, we could follow through. And in Saleem, of course, he had the benefit of live videoconference. I'm sorry, Your Honor? In Saleem, he had the benefit of a live videoconference link.  And that, I think, probably affects the harmlessness analysis. But you heard from the government the sequence of events, and I'm not, I think, focused on the fact that the marshals had some basis, had a real basis, to determine that he needed to be put in a particular part,  that just didn't have the video link. But they tried. So why can't we have an exception to this accommodation practice that you're requesting? Sentencing proceedings get delayed all the time, sometimes for days, where they're continued on. There's no reason to rush this. There's no reason for it to happen. Let me just give you a hypothetical. Yes, Your Honor. Let's not use your client, but some other person, some other defendant, who was repeatedly disruptive and disruptive back in court. At a certain point, would you agree that there might be an exception that needs to be made to this accommodation practice? I think when you start to see that the client is disruptive, you can plan ahead and take this into account and set up for the possibility that you may have to have these accommodations. So there's a possibility of an exception to this accommodation rule that you... Well, he says Jones, right? Like, aren't they entitled to rely on a marshal assessment of volatility? I'm sorry, answer his question, but I'm wondering what Jones does to undermine your answer. I'm trying to... I apologize. Please answer Judge Loya's question first. No, I think what happens is we need to... there is planning ahead. If you know, if you're starting to see that there's a client who is disruptive and will continue to be disruptive, these accommodations can be planned out in advance if you need them. We plan for this, for all types of actions all the time. So I don't think there becomes any problem in terms of making accommodations. And that we can ensure that defendants can participate even if they are removed from the courtroom. If the client then, while in the lock-up, decides they want to stick their fingers in their ear and say, I can't hear you, I can't hear you, well, that's the client's choice at that point, but they have that opportunity to still participate and hear the proceedings. And they would be in a position where they wouldn't disrupt the proceedings. Do you have a question about Jones? I'm sorry, Your Honor, if... Well, I just... I thought we understood Jones to say that the court is entitled to rely on an assessment that the... that in that case, Mr. Jones was volatile and confrontational to take appropriate measures to reduce that volatility and confrontation. They should also take into account the court's desires to have the client participate to the best of their knowledge. Everything shouldn't be given... Well, the court can yell at the marshals, right? I mean, that's... I mean, there's a different issue about whether or not the court's instructions or intentions were accommodated and whether or not his due process rights were accommodated. Yes. We're not really in a position to decide how frustrated the judge should be if the judge thinks that the marshals behaved inappropriately, right? Yes, Your Honor. But there are still ways to ensure that the judge's wishes are taken care of and followed. In a courtroom with sentencing, the judge's orders are... override anything. Is that more or less... I didn't catch the last thing you said, Your Honor. In a sentencing, can a judge override the marshals' concerns? The judge... On any proceedings. The judge's rules should follow and the judge can... Here, the judge was taking the marshals' concerns into effect. All the judge would have had to have done was wait until my client was calmed down or could be moved or for the accommodations to be made. It did not have to be rushed to just go through with the sentencing. That's interesting. I thought you were going to say that the marshals really screwed up because the judge's orders were trumped, but instead you're now frustrated the judge didn't do extra stuff beyond what they did. I am frustrated with the marshals trumping the judge's orders, but that has not been my argument and I have not been focusing on the marshals, so I was not going to start bringing that up here, Your Honor. Thank you very much. We'll reserve the decision. Thank you, Your Honor.